AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

APR 29 2022

MITCHELL R. ELFERS
CLERK OF COURT

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
ELECTRONIC DEVICES LISTED IN ATTACHMENT A
AND LOCATED AT THE FBI OFFICE IN
LAS CRUCES, NEW MEXICO

Case No. 22-706 MR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See attachment A incorporated herein.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(g) | Felon in possession of a firearm and/or ammunition |
| 21 U.S.C § 841 | Possession with intent to distribute a controlled substance |

The application is based on these facts:
See attachment C incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Armida Maria Macmanus, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: April 29, 2022

City and state: Las Cruces, NM

_____
*Judge's signature*

Stephan M. Vidmar, U.S. Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

The property to be searched is a black Apple iPhone and a Sky Devices Elite T8 Plus tablet (IMEI 357958710268341; serial number SKYT8P2108026835) hereinafter, the "Devices." The Devices are currently located at the Federal Bureau of Investigation office in Las Cruces, New Mexico.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.  All records relating to violations of possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g) and possession with intent to distribute, in violation of 21 U.S.C. § 841, including:

    a. evidence of who used, owned, or controlled the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. evidence indicating how and when the Devices were accessed or used to determine the chronological context of the Devices access, use, and events relating to crime under investigation and to the user of the Devices;

    c. evidence indicating the user's state of mind as it relates to the crime under investigation;

    d. evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;

    e. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Devices;

    f. evidence of the times the Devices were used;

    g. passwords, encryption keys, and other access devices that may be necessary to access the Devices;

    h. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

i. records of or information about Internet Protocol addresses used by the Devices;

j. records of or information about the Devices Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

k. contextual information necessary to understand the evidence described in this attachment.

l. Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the Devices;

m. Audio and video calls made to or from the Devices, along with the duration and date and time each such communication occurred;

n. Any message logs or messages, whether sent from, to, or drafted on the Devices, along with the date and time each such communication occurred;

o. The content of voice mail messages and audio and video messages stored on the Devices, along with the date and time each such communication occurred;

p. Photographs or video recordings;

q. Information relating to the schedule, whereabouts, or travel of the user of the Devices;

r. Information relating to other methods of communications, including the contents of those communications, utilized by the user of the Devices;

s. Bank records, checks, credit card bills, account information and other financial records; and

2

t. Evidence of user attribution showing who used or owned the Devices, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI shall deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ELECTRONIC DEVICES LISTED IN ATTACHMENT A AND LOCATED AT THE FBI OFFICE IN LAS CRUCES, NEW MEXICO | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Armida Maria Macmanus, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since November 2005. I am currently assigned to the FBI's Albuquerque Division, Las Cruces Resident Agency, in Las Cruces, New Mexico. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. My experience as a Special Agent includes but is not limited to: conducting physical surveillance; interviewing witnesses; writing affidavits for and executing search warrants; working with undercover agents and informants; issuing administrative and federal grand jury subpoenas; analyzing financial records, telephone records, and data derived from the

use of pen registers, trap and traces, and assisting in wiretap investigations. I have participated in this investigation regarding allegations of Christopher Sanchez being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g), and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841.

3. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation, discussions with other agents involved in the investigation, and review of reports written by other agents and other evidence and materials concerning the investigation.

4. Through my training and experience, I know that narcotics traffickers often maintain one or more electronic devices, including cellular or smart phones, tablets, and computers, which they utilize to further narcotics trafficking activities. I also know that aside from cellular and smartphones, tablets and computers can be used to place phone calls, text messages and engage in video chats between people, including those engaged in criminal activity. Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors, and other co-conspirators. I know, based upon my training and experience, that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of narcotics, as well as the subsequent laundering of the proceeds of these illegal activities.

5. I also know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card

2

generally contains subscriber information and authentication information, and it may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. Which information is stored on the SIM card, on the device, or in both locations varies and depends on variables such as the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on the SIM card itself, as well as the device in which the SIM card was inserted.

6. I further know from my training and experience that a cache of information concerning drug trafficking activities and revealing the identity of the user of the device can be found on these devices. This information includes dialed, received, or missed calls and messages sent, received, or placed in draft status, which can be found on these devices, including in third-party applications (or "apps") with messaging and audio and video calling features, such as Facebook Messenger, WhatsApp and SnapChat. I know that the identities, telephone numbers, and usernames of other participants involved in narcotics trafficking activity are often maintained in contact lists on these devices, including in third-party social media and other applications. In my experience, narcotics traffickers also use these devices to take and store photographs or video recordings of themselves, including with their co-conspirators and with contraband including narcotics, currency, and firearms. Narcotics traffickers also use GPS applications (such as Google Maps or Apple Maps), which can reveal their whereabouts when they conducted or arranged narcotics related activities or travel, as well as establishing identity of the user of the device based on the locations frequented. In addition, narcotics traffickers can

3

also use these devices to store information related to the financial transactions related to narcotics trafficking, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by narcotics traffickers often contain evidence relating to their narcotics trafficking activities including, but not limited to, contact lists, lists of recent call activity, messages, voicemails, photographs and video recordings, GPS and location information, and financial accounts and records.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is a black Apple iPhone and a Sky Devices Elite T8 Plus tablet (IMEI 357958710268341; serial number SKYT8P2108026835), hereinafter, the "Devices." The Devices are currently located at the Federal Bureau of Investigation office in Las Cruces, New Mexico.

8. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. The Federal Bureau of Investigation ("FBI"), in Las Cruces, New Mexico (Dona Ana County), is investigating several shootings that took place in Las Cruces, New Mexico from April 11, 2022, to April 17, 2022.

10. On or about April 14, 2022, I contacted Jennifer Ramos, Senior U.S. Probation Officer, United States Federal Probation, and she confirmed Sanchez was on federal supervised release. Ramos also told me she had been in contact with officers from the Las Cruces Police Department (LCPD) due to allegations that Sanchez had been involved in a shooting in Las Cruces, New Mexico, over the weekend. Sanchez was previously convicted of the felony

offense of Conspiracy to Distribute 50 Grams and More of a Mixture and substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. 841(b)(1)(B). *See United States v. Christopher Michael Sanchez*, 17-CR-01909 (D.N.M). Sanchez began his term of federal supervised release on October 4, 2021.

11. I reviewed an LCPD police report authored by Officer Johnny Estrada which stated at on or about April 11, 2022, Officer Estrada was dispatched to a Mountain View Emergency Room clinic, located at 2811 Main Street in Las Cruces for an abandoned vehicle with several gunshot holes. Officer Estrada was approached by a witness (Witness 1) who said he/she was driving near the Pic Quick Store (now known as Circle K) at Sonoma Ranch Boulevard and Bataan Memorial East when a dark-colored SUV pulled up next to his/her car. An occupant inside the SUV began to say something to Witness 1 and his/her passenger. As Witness 1 drove away, he/she heard gunshots, which he/she believed were being shot in the air. Witness 1's passenger (Victim 1) said he/she had been hit by gunfire. Witness 1 drove his/her friend to get medical care. However, his/her friend got upset, refused, and walked away from Witness 2. Witness 2 did not see the shooter. Officers were able to make contact with Victim 1 and asked him/her to get medical treatment. Victim 1 refused because, according to him/her, he/she had outstanding warrants. Officer Estrada later learned Victim 1 had been shot in the arm and leg. Officer Estrada contacted a relative of Victim 1 who informed him the shooter was an individual who goes by the name "Scrappy" and drives a dark Nissan Altima. It is unknown how the relative obtained this information. LCPD was able to obtain casings from the shooting.

12. On or about Monday April 18, 2022, I received information from LCPD that Sanchez was identified as suspect in a shooting at the Kilby Motel, 1045 South Main Street, Las

5

Cruces, New Mexico, on or about April 17, 2022. A witness (Witness 2) provided Sanchez' name and moniker (Scrappy) as the shooter. Sanchez is alleged to have arrived at the motel intoxicated and engaged in a physical confrontation with one of the tenants. Sanchez allegedly pulled out a firearm and shot one round at the ground. The tenant left running on foot and was unable to be located by police. Witnesses told LCPD officers Sanchez departed in a black Jeep. Law enforcement officers later discovered the Jeep was actually a Dodge Nitro Sport Utility Vehicle (SUV). A second dispatch call was made, and the caller stated Sanchez returned to the Kilby Motel and fired another round. A single .22 caliber shell casing was found.

13. On or about April 28, 2022, I spoke with LCPD Sergeant Miranda Baker who confirmed Christopher Sanchez is known by the moniker "Scrappy."

14. I reviewed an LCPD report authored by LCPD Officer Kinney which stated that on April 18, 2022, Officer Kinney responded to a dispatch call regarding a disturbance. On his way there, Officer Kinney found a male (Victim 2) in the street near Valley and Main Streets who was yelling and then collapsed. Officers observed a large amount of blood on the male's shirt and determined he had been shot in the arm and injured in the back of his head. Officer Kinney assisted the male in obtaining medical care. Officers later attempted to obtain a statement from Victim 2. However, Victim 2 refused to provide any information related to the shooter and refused to press charges. Prior to responding to this call, Officer Kinney also responded to a shots-fired call near 1045 Main Street. The alleged shooter in this incident left the area in a black SUV. Officers located the alleged involved SUV, black Dodge Nitro. However, the vehicle failed to yield to officers.

15. I reviewed an LCPD report authored by Officer Johnny Estrada which stated that on or about April 18, 2022, he was dispatched to respond to an affray near 225 Desert Rose in

Las Cruces. Officer Estrada learned that a caller notified dispatch that they had heard three gunshots. Officer Estrada observer a trail of blood, which he photographed. He also located three casings located in front of 225 Desert Rose. Officers received several calls throughout the night from persons who identified the shooter as Christopher Sanchez.

16. I reviewed an LCPD report authored by Officer Luis Balderrama which stated that Officer Charli Velasco told him that a witness (Witness 3) told him Chris Sanchez, a.k.a. Scrappy, arrived at his/her apartment and observed Sanchez with a firearm. Sanchez placed the firearm on Witness 3's bed. Witness 3 also said Victim 2 might be a friend of Sanchez'.

17. I reviewed an LCPD report authored by Officer Charli Velasco which stated that Officer Velasco spoke with Witness 3 who told him Sanchez said, "the cops were already going after him and he had just run away from the cops."

18. A federal arrest warrant for Sanchez was issued on or about April 18, 2022, for probation violations. On April 20, 2022, Sanchez was arrested at the Super 8 motel, in Las Cruces, located at 3405 Bataan Memorial West, without incident. At the time of arrest, Sanchez was found in possession of 5.5 grams of Fentanyl (approximately 50 pills) and five Suboxone strips. An arrest warrant was issued for Sanchez for Possession with Intent to Distribute Fentanyl in the 3rd Judicial District Court of New Mexico on April 20, 2022. An iPhone and tablet were seized from Sanchez at the time of his arrest.

19. Based on my training and experience, as well as my conversations with other agents who investigate drugs crimes, I believe 50 pills of Fentanyl is a distributable amount. I spoke to another FBI agent who told me that on or about April 15, 2022, a source who works closely with that agent told the agent that a family member told the source that Sanchez is known to traffic Fentanyl to other individuals. The agent informed me the source is paid by FBI, and

the source has provided reliable information in the past. The agent is unaware of the source providing any information that has proven to be false.

20.     I reviewed a jail call obtained from the Dona Ana County Detention Center (DACDC) placed from an account named "Chris Sanchez" which was made on or about April 21, 2022. The caller, believed to be Sanchez, instructed Romen, Sanchez' brother, to return to the hotel and see if his cell phone was in there and that he didn't know if "they" searched the room. Based on my training and experience, I know that drug traffickers use electronic devices such as cell phones and laptops to communicate with others engaging in criminal activity by placing phone calls either with cellular phone service or using various applications to place phone calls via Wi-Fi connections to the internet. I also know that drug traffickers use electronic devices to coordinate dates, times and locations to conduct exchanges of drugs for money or other things of value.

21.     During the same call, Sanchez asked Romen to look up "Google" to search the recent shootings in Las Cruces. Romen told Sanchez that he could not find any recent news regarding shootings in Las Cruces.

22.     I reviewed a jail call obtained from the DACDC wherein an individual placed a call from an account named "Chris Sanchez" which was made on or about April 21, 2022. The caller, believed to be Sanchez, spoke with Elaine (identified by law enforcement as Elaine Zubiran, Sanchez' girlfriend). During the conversation, Zubiran tells Sanchez the feds had come by her residence looking for Sanchez.

23.     I reviewed a jail call obtained from the DACDC placed from an account named "Chris Sanchez" which was made on or about April 21, 2022. The caller, believed to be Sanchez, spoke with a woman I believe is his mother. The woman tells Sanchez that Romen, her

son and Sanchez' brother, told her not to try to get Sanchez' cell phone. The woman said she turned off the service on the phone. Sanchez said that he "has a password on it" and that "they" can't open it even if they wanted to. The woman said that it is probably the better thing that they can't get into it and that she thought Apple phones are harder to get into. Based on my training and experience, I know that persons who are engaged in criminal activity, including the drug trade, attempt to conceal their communications using Apple products due to their perceived security features.

24. Based on my investigation, I believe that prior to being arrested on April 20, 2022, Sanchez was aware that the police were after him. I believe he was attempting to evade law enforcement by staying at the Super 8 motel, rather than his residence. Thus, I believe there is probable cause that the Devices Sanchez was in possession of are devices that he was using to further his drug trafficking activities. Additionally, I believe the Devices in question may obtain evidence of Sanchez' locations between April 11 and April 18, 2022, when it is believed that Sanchez was in possession of a firearm. Sanchez was previously convicted of the felony offense of Conspiracy to Distribute 50 Grams and More of a Mixture and substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. 841(b)(1)(B).

18. Based on the foregoing, I believe evidence exists that Sanchez violated 18 U.S.C. § 922(g) and 21 U.S.C. § 841, as more particularly described in Attachment B, and the evidence may be found on the Devices seized from Sanchez at the time of his arrest on or about April 20, 2022.

**TECHNICAL TERMS**

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

9

a. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and speaking to FBI SA Sean Macmanus, who is an expert witness in cell phone analysis and mapping, I know that tablets and smartphones such as Android tablets and Apple iPhones have capabilities that allow them to access the Internet and connect to other devices, such as other computers, storage devices and cell phones. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

10

## **ELECTRONIC STORAGE & FORENSIC ANALYSIS**

1.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

2.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b.  A person with appropriate familiarity with how an electronic device works and the data generated by such devices may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

3.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium, that might expose

11

many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

4. *Manner of execution.* Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Armida Maria Macmanus, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on _April 29, 2022_:

_____
STEPHAN M. VIDMAR
UNITED STATES MAGISTRATE JUDGE

12